Argued November 6; affirmed December 3, 1935

# STATE *v.* HIGH

(51 P. (2d) 1044)

*George M. Roberts,* of Medford (Wm. M. McAllister, of Medford, on the brief), for appellants.

*G. A. Codding,* of Medford (G. W. Neilson, of Medford, on the brief), for the State.

BELT, J. The defendants, George High and Robert N. High, were tried and convicted of the crime of burning a dairy barn near Ashland, Oregon, with the intent to injure and defraud the Niagara Fire Insurance Company. The fire occurred on January 4, 1933. About 60 days prior to the date of the fire, the eight-acre tract upon which the barn and other small buildings were located was purchased at auction sale for $5,200, by the defendant George High. The initial payment was made by a post-dated check for $1,500, and the balance of the purchase price was to be evidenced by note and mortgage. At or about the time of this sale, said defendant obtained a policy of insurance on the barn alone with the Franklin National Insurance Company in the sum of $5,000. On December 19, 1932, oral application was made by Ed High, a brother of the defendants, for and on behalf of the defendant George High, to A. M. Beaver, Ashland agent for the Niagara Fire Insurance Company, for additional insurance on the barn alone in the sum of $10,000. When this appli-

cation was made, the defendant George High was a resident of Astoria, Oregon, engaged in business as a partner with one Joe Holland to whom reference will hereafter be made. Upon receipt of this application which was forwarded to the general agent of the Niagara Fire Insurance Company at Portland, Oregon, the agent, A. M. Beaver, wrote the following letter to the defendant George High:

"By the orders of your Bro. Ed, I have written up $10,000 insurance on your fine big Cement Barn, you will have 60 days to meet the Premium.

"I cannot say exactly just what that will be as yet, however we will have the Policy in a few days and then I can let you know if you care to have me write you another letter, or I guess you will be living here by that time and you can call in and find out.

"I will not be around here for a few days after the 22d as I have business in Southern Calif., am expecting to take advantage of the special rates that take effect at that date.

"Will be back by the fourth of Jan. providing nothing happens to delay me. But your Insurance will be in effect from to day at noon. for three years to come."

The Niagara Fire Insurance Company, upon receipt of the application, forwarded the policy to its agent. It remained on the latter's desk until the approximate date of the fire, as Beaver was absent from his office on a trip to California. When Beaver returned he found the policy together with a letter of later date cancelling the same. The policy was never delivered to the defendant George High nor was it ever countersigned by the agent.

On April 29, 1933, George High commenced an action in the circuit court in Jackson county to recover on the policy alleged to have been issued by the Niagara Fire Insurance Company. The cause was removed to

the federal court where a settlement of the controversy was made wherein the insurance company paid to George High the sum of $4,523.03, to be released from any claim of liability under the policy.

Holland, under a separate indictment, was charged with the burning of the barn to defraud the same insurance company. He entered a plea of guilty and offered testimony in behalf of the State against the defendants herein. The substance of his testimony is that the defendant George High offered him $1,000 to come to Ashland and burn the barn. There is evidence tending to show that, pursuant to such arrangement, he came to Medford where he met the defendant Robert N. High at a hotel. At this meeting Robert N. High was advised of the plot to burn the barn. High telephoned to his brother at Astoria to confirm such arrangement. Thereafter Holland and Robert High contacted Theron Martin at a pool hall and all of them, according to the testimony of the State, went to the farm near Ashland where the barn was situated and burned it for the purpose of defrauding the insurance company. Martin was jointly indicted with the defendants but was held by the sheriff of Multnomah county for the alleged commission of a crime there and did not testify in the instant action.

There are 22 assignments of error. However, we shall consider only those which, in our opinion, have merit. Most of the assignments do not comply with Rule 10 of this court with reference to the arrangement of propositions of law, points and authorities, and argument. We appreciate the fact that, in some cases, it is proper and does not violate the rule to combine in a brief under one heading certain assignments of error, but there is slight reason for doing so here. The rule

to which attention has been directed is a salutary one and should be observed.

■ Defendants assert that the indictment is fatally defective in that there is a failure to allege the beneficiary under the policy of insurance. The indictment is brought under § 14-307, Oregon Code 1930, which provides as follows:

"If any person shall willfully burn, or in any other manner injure or destroy any property whatever, which is at the time insured against loss or damage by fire or other casualty, with intent to defraud or prejudice the insurer, whether the same be the property of such person or of any other, such person, upon conviction thereof, shall be punished by imprisonment in the penitentiary not less than three nor more than seven years."

The gist of the offense is that the defendants burned the barn with the intent to defraud the Niagara Fire Insurance Company. It was not essential to allege that a policy was issued and delivered. Such contention was made in *People v. Barbera,* 29 Cal. App. 604 (157 P. 532), and the court, in considering a statute identical with § 14-307, Oregon Code 1930, held adversely to the appellant therein. Also see *People v. Morley,* 8 Cal. App. 372 (97 P. 84), wherein the court said:

"The questions of what persons are prejudiced or what persons are benefited by the commission of a crime of this character are merely collateral ones. The guilt of the accused does not depend upon the legal obligations arising out of the policy. United States v. Amedy, 11 Wheat (U. S.) 409, 6 L. Ed. 502; State v. Tucker, 84 Mo. 25; People v. Hughes, supra (29 Cal. 260). This is evidenced also by the language of section 548 itself. No element of advantage to the defendant is made a part of the offense, and the person who burns insured property with the intent to defraud

is guilty whether the property or possession be his or that of another."

As stated in 5 C. J. 567:

"* * * the policy need not be set forth according to its tenor, and the indictment need not aver that the accused held a valid policy, or any policy."

The indictment follows the language of the statute defining the crime charged and we think it is sufficient.

■■ Defendants contend there is a failure to establish that, at the time the barn was burned, it was then and there insured against loss by fire by the Niagara Fire Insurance Company since it appears from the uncontradicted evidence that no policy was ever issued or delivered. The guilt or innocence of the defendants does not depend upon the validity or invalidity of the policy: 5 C. J. 554; 2 R. C. L. 520. The more pertinent inquiry is: Did the defendants believe that the property was insured? As a matter of fact, the evidence discloses a valid contract for insurance and it was so considered by the insurer and the insured. Evidently, the defendant George High thought he had insurance on the property when he instituted an action to recover upon the same. It is equally clear that the insurance company considered it was liable under it or it would never have made the settlement above mentioned. See 26 C. J. 45; 14 R. C. L. 883; and cases cited in exhaustive note 92 A. L. R. 233.

■ Error is assigned on the ruling of the court in permitting the witness, Walter H. Jones, to testify, over the objection of the appellants, to the effect that the defendant George High had solicited and obtained a policy in the Franklin National Insurance Company in the sum of $5,000. It is true that such policy was not

directly involved in this case, but it was admissible for the purpose of showing the pecuniary motive of defendants. It is well established that the State may show over-insurance: *Stitz v. State,* 104 Ind. 359 (4 N. E. 145); *State v. Roth,* 117 Minn. 404 (136 N. W. 12); 5 C. J. 574; Underhill Criminal Evidence (4th Ed.) § 618; Wharton Criminal Evidence (11th Ed.) § 249.

▮▮ It is believed that the principal assignment of error pertains to the instructions of the court claimed by appellants to have been an invasion of the province of the jury on questions of fact. Counsel for appellants rely upon § 2-308, Oregon Code 1930, wherein it is provided:

"In charging the jury, the court shall state to them all matters of law which it thinks necessary for their information in giving their verdict, but it shall not present the facts of the case, but shall inform the jury that they are the exclusive judges of all questions of fact."

The above section undoubtedly prohibits a court from commenting on the effect and value of the evidence but, in our opinion, it does not prevent the court from calling the attention of the jury to certain portions of the evidence for the purpose of explaining the theory of the State. In the instant case, the trial court was careful to avoid expressing any opinion as to what the evidence showed or tended to show. Indeed, there was no comment upon the evidence, but merely a recital or review of the evidence. Whenever any reference was made to the evidence, the trial court invariably stated that the same was introduced "for the purpose of showing" some theory on the part of the State. Furthermore, the court was careful to explain that the jurors were the exclusive judges of the effect and value of evidence. The instructions, when considered in their

entirety, disclose a remarkably clear statement of the law applicable to the facts and the rights of the defendants were in no way prejudiced. The only error made by the trial court in the recital of the evidence pertains to the testimony of Miss Mobley, in which the court said that she testified "that R. N. High made some statement to her that he was to get $1,000 as the result of a fire or insurance". But the court, as a matter of caution, said: "* * * whatever the fact may be about that,—I will leave that to your recollection—and that he would help her out when he got that money—loan her some money." The record discloses evidence that the statement that Robert N. High was to receive a thousand dollars as a result of the fire was made to the witness Lois Templeton, rather than to the witness Marcella Mobley. However, Miss Mobley did testify that she had a conversation to the effect that "Babe (Robert N. High) had understood the fact that I owed some room rent at the hotel where I was staying, so he offered to loan me some money to pay up this room rent when he got some money and he said he would soon have some in connection with some fire and that was about all the conversation amounted to". This slight misstatement of the evidence does not warrant a reversal, especially in view of the clear proof of the defendants' guilt. The judgment of conviction is affirmed.

CAMPBELL, C. J., and ROSSMAN and KELLY, JJ., concur.