JOHNSON, *Appellant,*

*v.*

CLARK EQUIPMENT COMPANY et al, *Respondents.*

547 P2d 132

[ 404 ]

*James B. Griswold,* Portland, argued the cause for appellant. With him on the briefs were Green, Griswold & Pippin, Portland, and Macdonald, Dean, McCallister & Snow, Astoria.

*Roland F. Banks, Jr.,* Portland, argued the cause for respondent Clark Equipment Company. With him on the brief were Ridgway K. Foley, and Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland. Also on the brief were John J. Higgins, and Black, Kendall, Tremaine, Boothe & Higgins, Portland, for respondent Topline Equipment Co.

Before O'Connell, Chief Justice, and McAllister, Denecke, Holman, Howell and Bryson, Justices.

HOWELL, J.

## HOWELL, J.

This is a products liability case in which plaintiff seeks to recover damages for injuries he sustained while operating a forklift truck manufactured and designed by defendant Clark Equipment Company and sold to plaintiff's employer by defendant Topline Equipment Co. Plaintiff appeals from a jury verdict for defendants.

Plaintiff assigns as error the giving of certain instructions relating to the concept of strict liability as well as those concerning assumption of risk. The plaintiff also assigns as error the court's failure to give his requested instructions on those issues.

Plaintiff was employed as a forklift operator at the Warrenton Lumber Company in Warrenton. His job entailed moving bundles of lumber about the Warrenton plant. Because of his various responsibilities, the job was a rather hectic one. The accident occurred on June 24, 1971, shortly after plaintiff's shift began and while he was engaged in feeding the random planer. Plaintiff was in a hurry and was carrying two banded bundles of 2 x 4's which were to be placed on the chains leading into the planer. Before the bundles could be placed on the chains, it was necessary to cut the metal bands around them. Normally, these bands were cut either by the forklift driver himself or by another Warrenton employee. On the day of the accident, plaintiff had no one to help him by cutting the bands. Although he normally dismounted his machine and moved to the front to cut the bands, on this occasion plaintiff remained in the cab of the forklift and reached through the uprights with the cutters. While he was cutting the bands, his body came in contact with the ascent/descent lever controlling the movement of the forks. The forklift carriage descended and severed his arms just below the elbows.

Essentially, the forklift consists of a cab attached to uprights along which the forks are raised and lowered.

The uprights consist of inner and outer masts: the inner mast is hydraulically raised and lowered within the outer mast. The forks themselves are attached to a chain and sprocket device which causes them to follow the movements of the inner mast. Each mast is tied together at various points with horizontal crossbars. As the inner mast moves within the outer mast, the crossbars of the inner mast pass within 3/8 of an inch of the crossbars of the outer mast. At the time of the accident, plaintiff's arms were between the uprights, and, as the forks descended, the horizontal crossbars of the inner mast sheared plaintiff's arms against the crossbars of the outer mast and severed them.

The ascent/descent lever which caused the inner mast to descend when plaintiff's body came in contact with it is one of three levers controlling the movement of the forks. These levers are located at the front of the cab and to the right of the steering wheel. The ascent/descent lever is the nearest of the three to the steering wheel. The operator pushes this lever forward to raise the forks and pulls it back to lower them. Once the lever is released, a spring device returns it to a neutral position. Whenever the ascent/descent lever returns to a neutral position, the movement of the inner mast and forks ceases, and the load remains in mid-air.

In his complaint, plaintiff alleged faulty design and manufacture of the forklift. He charged that the forklift was defective and unreasonably dangerous in that (a) the uprights and cross members were positioned in a manner which allowed them to sever plaintiff's arms; (b) no guard or screen was placed between the cab and the uprights; (c) the ascent/descent lever was located so as to permit the operator's body to unintentionally come in contact with it; (d) the lever was not designed to remain in a neutral position until manually released; and (e) no adequate signs were included to warn the operator of the dangers posed by the machine. At the trial, there was conflicting evidence as to each of these alleged defects as well as to their combined effect.

As a preliminary matter, we note defendants' contention that any error committed in the instructions given concerning the concept of strict liability and the defense of assumption of risk was harmless because defendants' motions for a directed verdict and for an involuntary nonsuit should have been granted. In *Roach v. Kononen/Ford Motor Co.*, 269 Or 457, 525 P2d 125 (1974), we recently outlined several of the factors which the court should consider before submitting a design defect case to the jury.[1] Applying that criteria to the conflicting evidence presented in this case, we believe that there was a jury question as to the existence of the alleged defects and as to whether such defects rendered the forklift dangerously defective.

Plaintiff presented substantial, credible evidence indicating that (a) the machine's cautionary warnings were inadequate; (b) a wire screen should have been placed across the uprights to physically prevent an operator from coming in contact with the moving crossbars and rollers of the carriage; (c) the crossbars should have been positioned differently so as to lessen

---

[1] "* * * Factors which should be considered by the court in balancing the utility of the risk against the magnitude of the risk are:

" '(1) The usefulness and desirability of the product—its utility to the user and to the public as a whole.

" '(2) The safety aspects of the product—the likelihood that it will cause injury, and the probable seriousness of the injury.

" '(3) The availability of a substitute product which would meet the same need and not be as unsafe.

" '(4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.

" '(5) The user's ability to avoid danger by the exercise of care in the use of the product.

" '(6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instruction.

" '(7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.' " *Roach v. Kononen/Ford Motor Co.*, 269 Or 457, 464-65, 525 P2d 125 (1974), citing Wade, *On the Nature of Strict Tort Liability for Products*, 44 Miss L J 825, 837-38 (1973).

the danger of injury; (d) the control levers were inadequately guarded so as to prevent accidental movement; and (e) the combination of these factors made the machine potentially hazardous and constituted a design defect.[2] Defendants, in turn, presented their own testimony which conflicted with much of plaintiff's evidence.

Applying the criteria set forth in *Roach,* we do not believe that this conflicting evidence can be conclusively resolved so as to avoid the necessity of a jury verdict as to whether this forklift was dangerously defective. *See also Phillips v. Kimwood Machine Co.,* 269 Or 485, 498-501, 525 P2d 1033 (1974); *compare Askew v. Howard-Cooper Corp.,* 263 Or 184, 502 P2d 210 (1972). Similarly, we do not believe that the defendants established their affirmative defense of assumption of risk as a matter of law. There is evidence in the record that the plaintiff never actually knew or appreciated the danger presented by the alleged defects. Moreover, there is evidence that his decision to encounter the danger was not unreasonable. Consequently, the trial court's denial of defendants' motions was proper.

[2]In response to a question as to his opinion concerning the allegedly defective placement of the crossbars, one of plaintiff's experts testified as follows:

"Per se, they aren't necessarily a defect in fact. They are a defect in consideration of them being unguarded and within access of persons standing on the operator platform level. It is the combination of things, of the many factors that create the defect. The fact that you have cross bars, that they are in juxtaposition, that they are closing together and a shear line is created that is within access of a person in position where you might expect people to be either intentionally or inadvertently, and that they are not guarded as the safety code requires, and that there is no warning prominent enough of the nature—of the potential severity of the hazard. All of these together create the defect. If there was a windshield or some other physical barrier there would be no defect related to that accident. If the cross bars were separated the shear point would have been eliminated, then there would have been no defect that would have been related to that case. But it is the fact that they are all interlocked, if you please, interwoven, all present at the same time that created the potential for a hazard and which together constitute a defect."

Another of plaintiff's experts reached a similar conclusion: "My opinion is that the entire combination of arrangement was dangerous."

Concerning the issues raised by plaintiff in this appeal, we will discuss only those assignments of error which relate to the assumption of the risk defense since our dispositon of that issue makes consideration of plaintiff's other assignments of error unnecessary.[3]

The concept of assumption of risk in a products liability case differs somewhat from the traditional tort doctrine of assumption of risk. Accordingly, in *Findlay v. Copeland Lumber Co.,* 265 Or 300, 509 P2d 28 (1973), we adopted the definition of assumption of risk for products liability cases which is contained in Comment *n* to § 402A of the Restatement of Torts 2d (1965).[4] In contrast to the more traditional defense which includes only two elements — subjective knowledge and voluntary encounter — Comment *n* sets forth three elements which must be shown before the plaintiff can be barred from recovery. The defendant must show, first, that the plaintiff *himself* actually knew and appreciated the particular risk or danger created by the defect; second, that plaintiff voluntarily encountered the risk while realizing the danger; and, third, that plaintiff's decision to voluntarily encounter the known risk was unreasonable. If the trier of fact

[3]Before we begin our discussion of the assignments of error pertaining to the assumption of the risk defense, it should be pointed out that the legislature has recently intervened in this area. See Chapter 599, Oregon Laws 1975 *amending* ORS 18.470. Section 4(2) of this act provides as follows: "The doctrine of implied assumption of the risk is abolished." *See also* Vetri, *Products Liability: The Developing Framework for Analysis,* 54 Or L Rev 293, 314, n. 99 (1975). However, the applicability of this statute is not now properly before us, and we do not express any opinion as to its application to products liability cases.

[4]"Since the liability with which this Section deals is not based upon negligence of the seller, but is strict liability, the rule applied to strict liability cases (see §524) applies. Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery." Comment *n, §* 402A, Restatement of Torts 2d, p. 356.

finds that any one of these elements did not exist in a particular case, the defense cannot be sustained. *See Borel v. Fibreboard Paper Prod. Corp.,* 493 F2d 1076, 1097 (5th Cir 1973), *cert. denied,* 419 US 869 (1974).[5]

■■ In this case, although the trial court properly began by distinguishing assumption of risk from contributory negligence, the court's definition of assumption of risk was not complete.[6] There was no discussion of the element of unreasonableness as it relates to plaintiff's decision to encounter the risk.[7] Although the court did

[5]The Comment *n* defense represents a hybrid of contributory negligence and assumption of the risk. It combines both the subjective elements of the traditional assumption of the risk defense and the objective element of contributory negligence. The jury must find that the plaintiff had subjective knowledge and appreciation of the risk and voluntarily assumed it. The jury must also find that plaintiff's decision to assume the risk was objectively unreasonable. Whether the plaintiff's conduct constitutes a defense will depend upon the particular facts and circumstances of each individual case.

[6]The trial court's instructions as to assumption of risk were as follows:

"* * * [C]ontributory negligence of the injured user is not a defense. A mere failure on his part to discover the unreasonably dangerous condition, or a failure on his part to guard against the possibility of the existence of the unreasonably dangerous condition does not bar his right to recover. On the other hand, where an injured user is himself aware of and recognizes a defective condition which presents an unreasonably dangerous condition, and nevertheless voluntarily encounters it and assumes the risk of injury from that danger and then is injured as a result, he is barred from recovering.

"Each of the defendants has set forth as an affirmative defense in its answer to the complaint the claim that the plaintiff's injury was caused by his own act in voluntarily encountering a known danger and assuming a risk of injury by proceeding to use the forklift in an unreasonable manner by placing his arms through the upright assembly when the lift carriage was in a raised position while he was aware of each of the conditions in which he alleges the forklift was defective.

"Defendants have the burden of proving by a preponderance of the evidence that plaintiff himself voluntarily encountered a known danger and assumed the risk of injury from it in the manner claimed and so caused the accident and his resultant injuries.

"Plaintiff denies that he voluntarily encountered a known danger and assumed the risk of injury, causing thereby his accident and his resultant injuries."

[7]The court discussed the concept of "unreasonableness" twice in this instruction. However, neither discussion related to the quality of plaintiff's decision to encounter the danger. The first concerned only the allegedly "unreasonably dangerous" condition of the machine in the context of plain-

at least mention the other two elements,[8] proof of all three elements is essential to the assumption of the risk defense outlined in Comment *n* of the Restate-

tiff's knowledge of that condition. The second appeared in the court's paraphrase of defendants' answers and concerned the allegedly "unreasonable manner" in which plaintiff used the machine. In this context it is unclear whether the "unreasonable manner" of plaintiff's use related to the defense of product misuse or to the affirmative defense of assumption of risk. However, it does seem clear that in either event the discussion related only to the manner in which plaintiff used the forklift, rather than to the quality of his decision to encounter the danger created by the alleged defect.

Since this cause is to be remanded for a new trial, we think it proper to point out that we believe that it would be less confusing if the issues of product misuse and assumption of risk were not commingled in the jury instructions.

The issue of product misuse relates to the scope or extent of defendants' duty and to whether that duty has been breached. Defendants are required only to protect against reasonably foreseeable product uses. *See* Restatement of Torts 2d, § 402A, Comment *h. See also Findlay v. Copeland Lumber Co.*, 265 Or 300, 304, 509 P2d 28 (1973); *Anderson v. Klix Chemical*, 256 Or 199, 208-09, 472 P2d 806 (1970). In contrast, the issue of whether a particular plaintiff assumed the risk created by defendant's product is an affirmative defense and arises only after the trier of fact has determined that the product was dangerously defective. *See* Restatement of Torts 2d, § 496G; Keeton, *Assumption of Risk in Products Liability Cases*, 22 La L Rev 122, 164 (1961); Keeton, *Assumption of Products Risk*, 19 Sw L J 61, 67-68 (1965).

[8] Preferably, in a case such as this one in which the testimony regarding plaintiff's actual knowledge and appreciation of the danger presented by the alleged defects was vigorously in dispute, the jury should receive more thorough instructions concerning the necessity of a finding of subjective rather than objective knowledge. This is a fairly sophisticated distinction, and it should not be too readily assumed that the jury will recognize its full import of their own accord.

The question is one of fact: whether, at the time he encountered the risk, this particular plaintiff understood and appreciated both the danger itself and the nature, character and magnitude which made it unreasonable. Thus, it is plaintiff's own knowledge, understanding and appreciation of the hazard which must be assessed, rather than that of the reasonably prudent person. However, the determination is not to be made solely on the basis of the plaintiff's own statements, but rather upon the jury's assessment of all of the facts established by the evidence. No juror is compelled by the subjective nature of this test to accept the plaintiff's testimony that he was unaware of the defect and the danger if, in the light of all the evidence, he could not have been unaware of the particular hazard presented. In this regard, factors such as the plaintiff's age, experience, knowledge and understanding, as well as the obviousness of the defect and the danger it poses, will be relevant to the jury's inquiry. *See Williams v. Brown Mfg. Co.*, 45 Ill 2d 418, 261 NE2d 305, 46 ALR3d 226 (1970); Restatement of Torts 2d, § 496D and comments thereto; W. Prosser, The Law of Torts 447, § 68 (4th ed 1971).

ment of Torts 2d, § 402A, and adopted by this court in *Findlay v. Copeland Lumber Co., supra. See also Borel v. Fibreboard Paper Prod. Corp.,* supra at 1107 ("continued use of a product known to be defective would be a defense to a strict liability action *only* when the continued use was 'voluntary' and 'unreasonable' ").

Although plaintiff excepted to the court's instructions on this issue, his exception did not point out the inadequacy as to the unreasonableness element and, therefore, was not sufficient to apprise the court of that deficiency. Consequently, without more, we would not reverse this case on the basis of the court's instructions relating to the assumption of risk. However, plaintiff did request a further instruction on this issue which would have explained to the jury that, when determining whether plaintiff should be held to have assumed the risk, they were to consider all the surrounding circumstances and conditions—including the working conditions at the time of the accident.[9] Plaintiff excepted to the failure to give his requested instruction, and no comparable instruction was given. We feel that the court's failure to give the instruction was error.[10]

The reasonableness of any decision to encounter a

---

[9] Plaintiff's Requested Instruction No. 14 was as follows:

"I have heretofore mentioned to you the circumstances of plaintiff's own actions which could, under the evidence, prevent his recovery in this case. Along with the matters already mentioned to you, you are to consider all of the circumstances and conditions facing the plaintiff at the time and place of his injury. In doing so, you are to consider the working conditions, his obligation to do his job and the instructions he had received in connection therewith."

[10] Defendants assert that plaintiff's requested instruction was an improper comment on the evidence which would be prohibited under ORS 17.255. It is clear from our past decisions that ORS 17.255 forbids instructions which comment on the probative value of the evidence presented in a particular case. *See Franks v. Smith,* 251 Or 98, 444 P2d 954 (1968); *Hanson v. Schrick,* 160 Or 397, 85 P2d 355 (1939). However, it is equally clear that the requested instruction was not a comment on the probative value of the evidence, but rather an attempt "to call [the jury's] attention to the issues to be passed upon by it." *Franks v. Smith,* supra at 103-04, quoting *State v. Raper,* 174 Or 252, 260, 149 P2d 165 (1944). *See also State v. High,* 151 Or 685, 691, 51 P2d 1044 (1935).

known danger must depend upon the circumstances surrounding that decision as well as on the relative probability and gravity of the risk incurred. Whenever the jury attempts to ascertain whether a plaintiff's decision to encounter a known risk was reasonable, it will be necessary for them to consider the conditions which motivated the decision, the pressures which were operating on the plaintiff, and the amount of time which he had to make the decision.

It should be emphasized that this element of unreasonableness pertains only to the nature of plaintiff's decision to encounter the known danger. We are not concerned with the apparent reasonableness or unreasonableness of the physical conduct through which plaintiff encountered the danger, but rather the reasonableness of his decision to do so. This distinction, while seemingly theoretical, is significant. The actions through which one encounters a known danger may appear unreasonable—such as reaching through the uprights of a forklift—and yet the decision to so act still could be found to be reasonable when the circumstances surrounding the incident are considered. *See, e.g., Messick v. General Motors Corp.,* 460 F2d 485, 493 (5th Cir 1972) ("Thus, if there was some reasonable necessity or propriety which justified [the exposure], or if by the exercise of care proportionate to the danger Plaintiffs might reasonably have expected to have avoided the danger, * * * then Plaintiffs cannot be found to have voluntarily exposed themselves to the risk."); *Devaney v. Sarno,* 125 NJ Super 414, 418-19, 311 A2d 208 (App Div 1973), *aff'd* 65 NJ 235, 323 A2d 449 (1974) ("Under such circumstances, it was for the jury to say whether Devaney, conscious of the risk of driving without a seat belt and the possibility of being involved in an accident, acted unreasonably in driving his car on the day in question."). *See also,* Keeton, *Assumption of Products Risk,* 19 Sw L J 61, 69, 71 (1965); Keeton, *Assumption of Risk in Products Liability Cases,* 22 La L Rev 122, 154-59 (1961). *Compare,* Twerski, *Old Wine in a New Flask—Re-*

*structuring Assumption of Risk in the Products Liability Era,* 60 Iowa L Rev 1, 43 (1974).

We feel that working conditions and related circumstances are a particularly relevant consideration in an inquiry into the reasonableness of a decision to encounter a job-related danger. Such factors often will have a strong influence on that decision, and, in some cases, they may represent the most important motivational factors. For example, a worker might fear that a slowdown in his individual production would slow down the entire production team and thereby draw the attention of his boss. If he has a history of such slowdowns, or of causing excessive spoilage or ruining machine parts, he may have good cause to fear dismissal. The job market could be tight, and he may have little hope of being able to find a new job. Moreover, the situation may demand an immediate, hurried decision. It is certainly possible that, under such circumstances, a reasonable jury could find that his decision to encounter a known risk was not unreasonable. *See* Twerski, supra at 22; *Walsh v. Miehle-Goss-Dexter, Inc.,* 378 F2d 409, 414 (3d Cir 1967) ("In determining the standard of conduct of one who is injured in the performance of his employment, the working conditions and all of the circumstances incident thereto, including his obligation to do his job, must be considered."); *Brown v. Quick Mix Co.,* 75 Wash 2d 833, 836, 454 P2d 205 (1969) ("It could never be said as a matter of law that a workman whose job requires him to expose himself to a danger, voluntarily and unreasonably encounters the same."). *Cf. Rhoads v. Service Mach. Co.,* 329 F Supp 367, 381 (ED Ark 1971) ("The 'voluntariness' with which a worker assigned to a dangerous machine in a factory 'assumes the risk of injury' from the machine is illusory."); *Mumma v. Reading Co.,* 247 F Supp 252, 257 (ED Pa 1965) ("[P]laintiff must be declared free of contributory negligence as a matter of law because the risk of harm itself was not so imminent, nor was the likelihood of injury so great that, in view of the interest plaintiff sought to advance, no prudent man would face it.").

*See also Kessler v. Bowie Machine Works, Inc.,* 501 F2d 617, 621 (8th Cir 1974); *Borel v. Fibreboard Paper Prod. Corp.,* supra at 1098; *Greco v. Bucciconi Eng. Co.,* 407 F2d 87, 93 (3d Cir 1968); *Ferraro v. Ford Motor Co.,* 423 Pa 324, 223 A2d 746 (1966). *But cf. Ralston v. Illinois Power Co.,* 13 Ill App 3d 95, 299 NE2d 497 (1973).

Hindsight is always better than foresight, and the reasonableness of a decision to encounter a risk should be determined as of the time that decision is made. In this case there was considerable testimony about the hectic nature of the forklift driver's job from both the plaintiff himself and from a former driver who had been doing the same work plaintiff was doing at the time of the injury, and who had asked for another position when he found that he was no longer able to keep up that job's demands. Plaintiff indicated that if his forklift had been able to keep up with the heavy loads and the fast pace which he was required to maintain, he would not have been in a rush, time would not have been so important, and he would have been able to get off the machine to cut the wire bands. Plaintiff testified that all he was thinking of at the time of the accident was "[t]he time that I had to do the job in, and the job I was doing." He also stated that if he had had time to think about it he would not have reached through the uprights. Significantly, the defendants' brief concedes that plaintiff encountered the risk only because of his working conditions, and at trial defendants even argued that such factors were the sole cause of plaintiff's injury.[11]

---

[11] Defendants, while conceding that plaintiff encountered the risk "only because he was in a hurry to keep up with the work assigned by his employer," contend that it would be unfair to allow the jury to consider these working conditions since neither defendant had any control over them. That argument, however, assumes that working conditions would be relevant in this case only if they were somehow related to defendants' own conduct. The assumption is incorrect. The working conditions are relevant to the inquiry into the reasonableness of plaintiff's decision to encounter an allegedly known danger. What the jury must then determine is whether plaintiff unreasonably assumed the risk created by defendants' product so that plaintiff should be barred from the recovery to which he would otherwise be entitled.

■ Therefore, even if the jury disbelieved plaintiff's testimony and concluded that he knew and appreciated the danger that the carriage might somehow start to descend while his arms were through the uprights, and, further, that his actions in reaching through the uprights were voluntary, there would still remain an issue for the jury's consideration—whether, under the evidence in this case, his decision to do so was unreasonable. The issue is not whether it might have been more reasonable to have selected another method of cutting the bands around the lumber but rather, whether it was unreasonable, under all the circumstances, for plaintiff to have selected the method he did.

■ Thus, considering all these circumstances, we find that the requested instruction should have been given. *See Borel v. Fibreboard Paper Prod. Corp.*, supra at 1098; *Messick v. General Motors Corp.*, supra at 494; *Greco v. Bucciconi Eng. Co.*, supra at 93. Moreover, it is apparent from a review of the evidence in this case that the issue of assumption of risk was a matter of vital importance and may well have been the issue upon which the jury based its verdict for the defendants. Therefore, we conclude that this case must be reversed and remanded for a new trial.[12]

Reversed and remanded for a new trial.

---

[12] Since there has been a change in the law of products liability in this state while this case was pending on appeal (*see Phillips v. Kimwood Machine Co.*, 269 Or 485, 525 P2d 1033 (1974); *Roach v. Kononen/Ford Motor Co.*, 269 Or 457, 525 P2d 125 (1974), we believe that the retrial of this cause should proceed in accordance with those decisions.

In this connection, we think it proper to point out that the products liability instruction which was given by the trial court does not accord with these recent decisions. The instruction given by the trial court included the following passage:

"A product is said to be dangerously defective when it presents an unreasonable danger when used by persons expected to use it in the ordinary variety of ways in which the manufacturer or seller could reasonably expect it to be used by such persons. By 'reasonably expected' I simply mean 'forseeability.' Should the manufacturer or the seller have foreseen the product would present an unreasonable danger to the user?"

**HOLMAN, J.,** specially concurring.

I agree that under Restatement (Second) of Torts § 402A, comment *n.,* there are three requirements for assumption of risk: (1) subjective knowledge, and (2) a voluntary encounter which is (3) unreasonable under the circumstances. I also agree that the trial court failed to instruct on the third requirement but that plaintiff did not except to the instruction as being inadequate on that basis and, therefore, the case could not be reversed on that ground.

The majority opinion then attempts to get at basically the same defect because of the court's failure to give the following instruction:

> "I have heretofore mentioned to you the circumstances of plaintiff's own actions which could, under the evidence, prevent his recovery in this case. Along with the matters already mentioned to you, you are to consider all of the circumstances and conditions facing the plaintiff at the time and place of his injury. In doing so, you are to consider the working conditions, his obligation to do his job and the instructions he had received in connection therewith."

Although this instruction was correct as to the governing law at the time this case was tried, the actual foreseeability of the danger presented by the product is no longer an issue after *Kimwood* and *Roach.* As these decisions pointed out, the law of strict products liability *assumes* that the particular danger presented was foreseeable by the manufacturer

Foreseeability is a negligence concept; a standard for assessing culpability. As such, it is not an appropriate consideration when determining whether a manufacturer should be held liable without fault. If, however, we *assume* foreseeability of the danger and ask only whether it would be reasonable to market the product in that condition with full knowledge of the risks involved, then that inquiry will reflect the proper focus of the law of products liability and center on the condition of the product, rather than on the culpability of the particular manufacturer.

This focus is preserved in the jury instruction which this court suggested in the *Kimwood* case:

> "The law imputes to a manufacturer [supplier] knowledge of the harmful character of his product whether he actually knows of it or not. He is presumed to know of the harmful characteristics of that which he makes [supplies]. Therefore, a product is dangerously defective if it is so harmful to persons [or property] that a reasonable prudent manufacturer [supplier] with this knowledge would not have placed it on the market." 269 Or at 501, n. 16.

[ 417 ]

The opinion holds that it was error not to give the instruction because it was necessary to point out to the jury that the conditions under which plaintiff worked were relevant to whether his actions in putting his arms through the forklift frame were unreasonable.

Despite there being no requirement that a person except to the court's failure to give a requested instruction, plaintiff undertook to tell the trial judge why the instruction should have been given in the following language:

> "* * * I am talking about, also, Instruction 14 that the jury could consider plaintiff's own knowledge, acts, as compared to those of a reasonably prudent person. * * *."

Instruction 14 was the one which the opinion holds it was error to fail to give. Plaintiff told the trial court that the instruction should have been given because the jury should know that knowledge of the risk was a subjective and not an objective knowledge. He did not tell the court that the instruction should have been given because the act of encountering the risk had to be an unreasonable one. The reason given by the majority for reversing the case was obviously not in the minds of any of the participants in the lower court.

Assuming it was necessary to give an instruction that all the surrounding circumstances facing plaintiff must be taken into consideration by the jury in deciding whether he assumed the risk (surely a fairly obvious duty of the jury), it is my opinion that the instruction in this instance was one which the trial judge had the discretion either to give or to withhold. The last sentence of the instruction was as follows:

> "In doing so, you are to consider the working conditions, his obligation to do his job and the instructions he had received in connection therewith."

This is not the type of instruction which should be encouraged to the extent that we reverse a trial judge for failing to give it. While it may not be technically classed as a comment upon the evidence, it is the type

of instruction which points out specific evidence (particularly the part about the instructions which were given to plaintiff) in preference to other evidence. Such an instruction was the subject of the following comment in *Franks v. Smith,* 251 Or 98, 104, 444 P2d 954 (1968):

> "* * * Our approval of these instructions should not be construed as inferring that failing to give these requests would have been error. It would not. Whether or not to so instruct is largely within the trial court's discretion."

If giving the part of the instruction above set forth is good practice, in a case in which the evidence justified it, the trial court could have been required to give an instruction which included, "In doing so you are to consider * * * his necessity to earn money to support his family, his knowledge of the company's policy of terminating workmen," etc. Similarly, defendants would undoubtedly have evidence which bears upon the same subject and which they would want called to the attention of the jury by instruction. It is not good policy to reverse a judge for refusing to give an instruction which, instead of being general, points out particular evidence to the jury. I, therefore, disagree with that part of the majority opinion which reverses the case because of the failure to give the instruction.

The other serious issue in the case is the foreseeability instruction discussed in the majority opinion at n. 12. This instruction was in conformance with the tenor of *Anderson v. Klix Chemical,* 256 Or 199, 472 P2d 806 (1970), which held that there was no difference between negligence and strict liability insofar as a design defect was concerned. However, subsequent to the trial in this case, *Anderson* was overruled by *Phillips v. Kimwood Machine Co.,* 269 Or 485, 525 P2d 1033 (1974). The overruling had been foreshadowed by *Roach v. Kononen/Ford Motor Co.,* 269 Or 457, 525 P2d 125 (1974).

The instruction was not erroneous at the time it was given and a similar instruction was requested by

plaintiff. However, the defect in the instruction is so basic and vital to the whole idea of strict liability that, in fairness, plaintiff should probably have the benefit of the change in the law which occurred subsequent to the trial of the case. The issue of foreseeability, which is a negligence concept, is non-existent in a products liability case because it is assumed the manufacturer had full realization of the risk which injured plaintiff, whether or not he actually had or could have had such knowledge. Foreseeability having been assumed as part of the strict liability concept, there is no actual issue of foreseeability to be decided by the jury.

Because the giving of a foreseeability instruction made an ordinary negligence case of the issue, plaintiff was never given a chance to recover on strict liability. However, it should be made clear that the new trial is being ordered not because of any error on the part of the trial judge but because this court is, from time to time, changing the goalposts as the new concept of products liability gradually evolves.