Jane BRECH, Appellant,

v.

J.C. PENNEY COMPANY, INC.,
Appellee.

No. 82–1442.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1982.

Decided Jan. 12, 1983.

John Blackburn, Blackburn Law Offices, Yankton, S.D., David V. Vrooman, Sioux Falls, S.D., for appellant.

Steven M. Johnson, Brady, Kabeiseman, Reade, Abbott & Johnson, Yankton, S.D., for appellee.

Before LAY, Chief Judge, BRIGHT and JOHN R. GIBSON, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Jane Brech was severely burned when her cotton flannelette nightgown caught fire while she was cooking breakfast. Her strict liability claims against J.C. Penney Company, from whom the gown was allegedly purchased, were tried to the district court without a jury, and a judgment for defendant resulted.[1] *Brech v. J.C. Penney Company, Inc.,* 532 F.Supp. 916 (D.S.D.

---

1. The Honorable Fred J. Nichol, United States District Judge for the District of South Dakota, Southern Division.

1982). Jane Brech contends that the district court erred in concluding that the nightgown was not unreasonably dangerous, and in finding that Penney's had no duty to warn her of the nightgown's alleged propensity to ignite easily and burn quickly when worn around a gas stove. She further argues that the district court improperly refused to allow her to amend her complaint to seek punitive damages. As we conclude the findings of the district court were not clearly erroneous, we affirm.

Jane was seventeen years old when she was burned on January 9, 1978. She was wearing the flannelette nightgown tucked into her jeans while she was cooking oatmeal for breakfast on the gas stove in her kitchen. The gown had been purchased by her brother in December, 1976, at the J.C. Penney retail outlet in Yankton, South Dakota.[2] Jane testified that she walked back and forth between the living room and kitchen several times so that she could watch television while she was preparing breakfast.

As Jane was pouring oatmeal into boiling water, she smelled smoke and saw that the left sleeve of her gown was on fire. She patted this out with a small hand towel, and then realized that her jeans and the front of her gown were also on fire. She rolled on the floor to attempt to put out the flames, and when this failed she ran into the shower.

The temperature was extremely cold on the day the accident occurred, and Jane was operating a natural gas space heater in the living room to help heat the house. The heater was exposed because the glass covering on the pilot light was broken and had been removed. She also apparently had lit the gas oven in the kitchen and had left the oven door open to provide additional heat.[3] Plaintiff's theory was that the flame which she had first noticed on her sleeve rapidly spread to the front of her gown and her jeans, even though she thought she had put it out. Defendant's expert witness, Dr. Golub, testified, and the district court accepted, that the fire was caused by more than one ignition source. Plaintiff's jeans were ignited either by the uncovered space heater or by the open oven, and her gown sleeve was ignited by the gas stove burner. The fire in the sleeve was patted out, but the jeans continued to burn upward until the front of the gown caught fire.

Defendant's motion for judgment was denied and after hearing all the evidence, the district court entered findings of fact, conclusions of law and a judgment for defendant.

Many facts were in dispute. In reviewing the court's factual findings, we are limited by Rule 52(a), Fed.R.Civ.P.:

> We cannot review the case *de novo.* We view the evidence in the light most favorable to the prevailing party, and we cannot reverse the trial court unless we should find that its findings are clearly erroneous. We must bear in mind that the trial judge has had the better opportunity to weigh the credibility of the witnesses.

*Mears v. Olin,* 527 F.2d 1100, 1103 (8th Cir.1975). *See also: Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982).

Plaintiff's strict liability claim was based on two counts: (1) that her cotton flannelette gown was defective and unreasonably dangerous because of its tendency to ignite quickly and burn rapidly, and (2) that defendant failed to warn that the gown should not be worn around a gas stove because of its unusual burning characteristics.

South Dakota adopted the doctrine of strict liability in tort in *Engberg v. Ford Motor Co.,* 87 S.D. 196, 205 N.W.2d 104 (1973). "The chief elements which a plaintiff must prove in a case involving strict

---

**2.** There was a factual dispute over whether the nightgown was in fact a Penney's product. The district court assumed for purposes of its decision, however, that the nightgown was purchased at Penney's.

**3.** Testimony on this point was conflicting. However, the district court found that it was "quite probable" that the oven was being used as a heat source when the accident occurred.

liability in tort are (1) the defective and unreasonably dangerous condition of the defendant's product, including the defendant's connection with the product, and (2) a causal connection between such condition and the plaintiff's injuries or damages." *Fajardo v. Cammack,* 322 N.W.2d 873, 876 (S.D. 1982). Even if the product itself is not defective, "[w]here a manufacturer or seller has reason to anticipate that danger may result from a particular use of his product, and he fails to give adequate warning of such a danger, the product sold without such warning is in a defective condition within the strict liability doctrine." *Jahnig v. Coisman,* 283 N.W.2d 557, 560 (S.D.1979).

Judge Nichol found for defendant on the first count, stating:

> The plaintiff . . . offered neither expert nor lay testimony as to the unreasonably dangerous nature of this gown or the unusual burning characteristics of the gown. This leaves the Court with uncontroverted evidence that this nightgown was made of fabric classified as "normal flammability"; that in comparison to other materials generally used in clothing, the nightgown was safer than most other materials; and in fact the nightgown would meet and even surpass the more stringent requirements for children's clothing. The plaintiff did not introduce one shred of evidence that would support even an inference that the nightgown was defective or unreasonably dangerous. The plaintiff attempts to persuade the Court that the very fact that Jane Brech suffered severe burns to forty percent of her body makes the gown ipso facto defective. This indeed is not sufficient to impose liability on Penney's as the seller of the garment.

532 F.Supp. at 921.

 Plaintiff argues that her testimony of the fire and the burns she sustained are ample evidence of the unreasonably dangerous nature of the gown.[4] We disa-

gree. Plaintiff produced no expert witness. The only witness to the incident was Jane herself, whose testimony as to how long it took her nightgown to burn was contradictory. At one point Jane testified that her clothing was burning for five minutes before the fire was finally put out.

Defendant produced substantial evidence tending to show that the nightgown burned at a relatively slow rate of speed. The district court considered the test results on the flammability of Jane's gown as compared to a similar gown owned by a neighbor, and one obtained from Penney's. The court accepted testimony of defendant's expert, Dr. Golub, that Jane was safer in the nightgown than she would have been wearing many other garments including the average shirt, blouse or dress. Dr. Golub in fact testified that plaintiff was safer in the nightgown than she would have been in 75% of the clothing on the market. Defendant also established that the fabric from which the gown was made exceeded by four times the requirements for normal flammability under the Flammable Fabrics Act, 15 U.S.C. § 1191, *et seq.* Although evidence that the gown surpassed federal standards is not necessarily conclusive proof that the garment was not unreasonably dangerous, it is nevertheless evidence which the court can consider on the issue. *Simien v. S.S. Kresge Co.,* 566 F.2d 551 (5th Cir. 1978).

 We cannot conclude, based on the evidence in this case, that the district court's findings as to the unreasonably dangerous nature of the gown or the unusual burning characteristics of the gown were clearly erroneous.

The district court further found that the danger that cotton would burn when exposed to flame was open and obvious, and concluded that there was no requirement that a manufacturer or seller warn about a danger that is generally known and recognized. *See:* Restatement (Second) of Torts,

---

**4.** Plaintiff argues that the district court unfairly and improperly imposed upon her a requirement to produce an expert witness to testify that the gown was unreasonably dangerous.

Our reading of the record indicates that Judge Nichol made clear to plaintiff that she could use either expert *or lay* testimony to establish her case.

§ 402A, comment j. In this case, plaintiff herself testified that she realized clothing could catch fire when exposed to flames.

The district court correctly concluded that plaintiff's "duty to warn" argument was misplaced since it was based on cases involving latent dangers which would not be understood or anticipated by the average consumer without a warning. *See: Jahnig v. Coisman,* 283 N.W.2d 557 (S.D.1979); *Degen v. Bayman,* 90 S.D. 400, 241 N.W.2d 703 (1976); *Yarrow v. Sterling Drug, Inc.,* 263 F.Supp. 159 (D.S.D.1967), *aff'd* 408 F.2d 978 (8th Cir.1969). The district court noted, "The South Dakota Supreme Court has never applied the failure to warn doctrine to an open and obvious danger." 532 F.Supp. at 922. We conclude that the district court did not err in finding that defendant had no duty to warn consumers of the gown's burning characteristics.

Plaintiff relies heavily on the case of *Gryc v. Dayton-Hudson Corp.,* 297 N.W.2d 727 (S.Ct.Minn.1980), *cert. denied,* 449 U.S. 921, 101 S.Ct. 320, 66 L.Ed.2d 149 (1981), in which the Minnesota Supreme Court upheld a substantial verdict for a four year old child who had been badly burned when her cotton flannelette pajamas were ignited by a kitchen stove. *Gryc* does not help plaintiff. The Minnesota Supreme Court ruled that because of the manufacturer's knowledge of the dangerous propensities of its product it had the duty to warn customers of such qualities. There was substantial evidence of knowledge of the hazard, including a memorandum stating the company was "sitting on a powder keg" with respect to the flammability of the flannelette. Plaintiff's experts in *Gryc* testified that the untreated cotton flannelette was unreasonably dangerous for use in children's sleepwear because of the instantaneous manner of ignition, the speed at which it burned, the amount of heat produced and the difficulty of extinguishing the flames. There was testimony in *Gryc* that garment manufacturers, wholesalers, retailers and consumers were not aware of the highly flammable characteristics of the untreated cotton flannelette. There was no similar evidence in our case. *Gryc's* discussion of the Federal Flammable Fabrics Act centered on whether compliance with the Act precluded a jury verdict awarding punitive damages. This discussion has no relevance to our case.

Plaintiff has cited other cases in which parties have recovered for injuries sustained when their clothing caught fire. Like *Gryc,* however, these cases were based on findings that the clothing in question burned unusually rapidly. *See e.g.: Raymond v. Riegel Textile Corp.,* 484 F.2d 1025 (1st Cir.1973); *LaGorga v. Kroger Co.,* 275 F.Supp. 373 (W.D.Pa.1967), *aff'd* 407 F.2d 671 (3d Cir.1969).

■ Plaintiff argues that evidence of eleven lawsuits filed against J.C. Penney involving burning nightgowns established knowledge on the part of Penney's that would require a warning. The district judge considered this evidence and was not persuaded "especially when the circumstances surrounding the cause of the fire and the nature of the fire itself are unknown." 532 F.Supp. at 922. The simple fact of prior lawsuits, without more, does not compel the conclusion that the district court was clearly erroneous in finding that no warning to the consumer was required.

■ Plaintiff also argues that the district court improperly refused to allow her to amend her complaint to add a claim for punitive damages. The proposed amendment alleged that Penney's catalog advertised both flame-resistant and ordinary fabrics, that the nightgown in question was purchased from a store that carried only untreated gowns, that no warnings were given and that previous claims relating to burning gowns had been filed against Penney's. Plaintiff had pleaded that defendant sold both flame resistant and non-flame resistant gowns in support of her claim for actual damages based on the failure to warn. Plaintiff introduced evidence on all the factual issues raised in both her original pleading and the rejected amended pleading in support of her failure to warn count for actual damages. This claim was concluded adversely to plaintiff. South Dakota fol-

lows the general rule that punitive damages "are not allowed absent an award for compensatory damages." *Johnson v. Kirkwood, Inc.,* 306 N.W.2d 640, 643 (S.D.1981). Since we affirm the district court's decision denying compensatory damages, plaintiff is thus not prejudiced by the district court's refusal to allow the amendment seeking punitive damages.

Finding no error, the judgment of the district court is affirmed.