Lyle BERG, Plaintiff and Appellee,

v.

SUKUP MANUFACTURING COMPANY,
A Corporation, of Sheffield, Iowa,
Defendant and Appellant.

No. 14194.

Supreme Court of South Dakota.

Considered on Briefs Feb. 14, 1984.

Decided Oct. 3, 1984.

Arlo Sommervold and William Fuller of Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, for plaintiff and appellee.

Lyle J. Wirt and Michael J. Schaffer of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellant.

TSCHETTER, Circuit Judge.

Defendant Sukup Manufacturing Company (Sukup) appeals from a judgment in favor of plaintiff Berg and from the ruling of the trial court denying its motion for judgment notwithstanding the verdict. We affirm.

## FACTS

In 1974 Larry Hansen, a grain farmer, purchased a grain drying system manufactured by Sukup. The system consisted in part of a grain bin in which were located several horizontal and vertical augers placed and designed in such manner as to circulate the grain being processed. The augers would convey the grain to the proximity of a forced hot air source that would facilitate the drying. The system as originally designed was equipped with a horizontal auger which conveyed the processed grain from the drying bin to a vertical auger which elevated the grain to a storage bin. The horizontal auger served a secondary purpose of being a power source for the activation of the agitating augers within the drying bin. The horizontal auger housing was fitted with a slide gate which was customarily used to secure samples of processed grain to ascertain the moisture content thereof.

A modification of the system was effected by Sukup in 1975. The modification provided for the installation of an unshielded drive shaft to power the agitating augers, leaving the horizontal auger with the function of transporting grain from the drying bin to the storage bin and of serving as a means of obtaining grain samples. The newly provided drive shaft was situated four to five inches from the slide gate when installed.

Although there were other methods of obtaining processed grain for testing, the slide gate was by far the most feasible method. Sukup knew that governing safety regulations required shielding of rotating shafts. Sukup had placed a warning decal on the power source of the originally installed drying system which read, "Keep hands, feet and clothing away from all augers and other moving parts when in operation."

On the day of the accident, November 13, 1979, Berg had secured a grain sample via the slide gate. Upon noticing that grain was dribbling from the slide gate, he reached past the rotating shaft to complete the closing of the gate. As he did so, his shirt sleeve became entangled in the rotating shaft, resulting in injury to his left arm.

After an occurrence highly similar to that in the instant case but two years prior

to Berg's injury, Sukup had designed a shield to be installed around the rotating shaft. Although no notice of this modification was imparted to the users of the drying systems, Sukup conducted schools for original equipment manufacturers to instruct on installation of the shields. Shields were made available to retailers of the systems.

## ISSUES

I. Did a justiciable issue exist concerning assumption of the risk? We hold in the affirmative.

II. Did a justiciable issue exist concerning contributory negligence? We hold in the affirmative.

III. Did the trial court err in instructing the jury that a manufacturer may be strictly liable for its failure to provide adequate warnings if the plaintiff was injured while putting the product to its intended use? We hold that it did not.

## DECISION

### I.

 Sukup contends that the trial court erred by refusing to direct a verdict in its favor based on Berg's assumption of the risk and in refusing to grant a judgment N.O.V. in its favor. The standard of review in regard to both motions is that this court must view the evidence in the light most favorable to the non-moving party. Questions of assumption of the risk and contributory negligence are ordinarily jury questions, and it is only when the facts are of such a nature that there can be no disagreement that the question should not be submitted to the jury. *Martino v. Park Jefferson Racing Ass'n*, 315 N.W.2d 309 (S.D.1982); *Myers v. Lennox Co-op Ass'n*, 307 N.W.2d 863 (S.D.1981).

In applying the doctrine of assumption of the risk to products liability cases the Restatement (Second) of Torts § 402A (1965) requires that in order to prevail under the assumption of risk theory, the manufacturer must show:

(1) That the plaintiff knew and appreciated the risk or danger created by the defect,

(2) that the plaintiff voluntarily encountered the risk while realizing the danger, and

(3) that the plaintiff's decision to voluntarily encounter the risk was unreasonable.

§ 402A, Comment n., p. 356. *See Johnson v. Clark Equipment Co.*, 274 Or. 403, 409, 547 P.2d 132, 138 (1976).

 Sukup urges that the defenses of contributory negligence and assumption of the risk were shown as a matter of law by virtue of the fact that the danger was open and obvious and therefore Berg used the product while cognizant of and contemplating the danger. The defense of contributory negligence is not available to bar recovery in a strict liability case. *Smith v. Smith*, 278 N.W.2d 155 (S.D.1979). The open and obvious danger does not in and of itself absolve Sukup of liability under an assumption of the risk or contributory negligence theory. *See Stenberg v. Beatrice Foods Co.*, 176 Mont. 123, 576 P.2d 725 (1978). Consideration must be given to the reasonableness of the plaintiff's conduct and whether the plaintiff abused or misused the product. In the instant case, Berg was putting the product to its intended and expected use when he exposed himself to the offending shaft.

 Sukup urges that it has no responsibility for Berg's injuries because the machine was designed in such a way that the risk to which Berg exposed himself was open and obvious. The reasonableness of the plaintiff's conduct is a factor for consideration. Reasonableness refers to whether the plaintiff had a reasonable opportunity to elect whether or not to subject himself to the danger. *Smith v. Smith, supra*. As the Supreme Court of Oregon stated in *Johnson, supra:*

We feel that working conditions and related circumstances are a particularly relevant consideration in an inquiry into the reasonableness of a decision to en-

counter a job-related danger. Such factors often will have a strong influence on that decision, and, in some cases, they may represent the most important motivational factors.

274 Or. at 414; 547 P.2d at 140. *See also Brown v. Quick Mix Co.*, 75 Wash.2d 833, 454 P.2d 205 (1969).

■ Berg was using the system in a manner foreseen and expected by Sukup. The slide gate was used to test grain. Sukup failed to instruct ultimate users to stop the unit when taking samples. The design was such that it placed the user in close proximity with the rotating shaft. Sukup was aware of the use of the slide gate to take samples and was aware of the danger thereby created. The slide gate location actually invited the operator into the location of the danger. Sukup did not convey information regarding installation of the drive shaft shield to the user. Whether the testing alternatives posed by Sukup were reasonable was highly questionable. These alternatives, suggested by Sukup at trial, included shutting the machine off or using a ladder to scale the storage bin and then probing the grain therein to secure samples.

Whether or not Berg had a reasonable opportunity to avoid the risk was a jury question. *Bitsos v. Red Owl Stores, Inc.*, 459 F.2d 656 (8th Cir.1972). Accordingly, the trial court did not err in refusing to direct a verdict or to grant judgment N.O.V.

## II.

The action was pleaded and tried on dual theories of strict liability and negligence. The trial court denied the defendant's motion for directed verdict and judgment N.O.V., each of which motions was premised on the grounds that Berg's conduct constituted contributory negligence as a matter of law.

As stated above, questions of negligence and contributory negligence and assumption of the risk are ordinarily jury questions. Only in instances where the facts are of such a nature that reasonable minds could not disagree must the matter be taken from the jury.

■ Sukup's redesign, which positioned the drive shaft in close proximity to the slide gate, the fact that Sukup knew of the hazard by virtue of a previous occurrence of like nature, and the fact that Sukup failed to take meaningful remedial action which could have been done by notifying users of the system to install the shaft shield, were facts sufficient to warrant the submission of the case to the jury. The question of whether Berg's conduct constituted more than slight negligence was properly submitted to the jury. As stated above, in deciding on a motion for directed verdict or judgment N.O.V., the trial court is required to view the evidence in the light most favorable to the non-moving party. We cannot say that the trial court erred in holding that Berg's acts did not constitute contributory negligence more than slight as a matter of law.

## III.

The trial court gave the following instructions to the jury concerning Sukup's duty to warn:

### INSTRUCTION NO. 18

In a products liability suit based upon strict liability, the product itself need not be defective. Where a manufacturer or seller has reason to anticipate that danger may result from a particular use of its product, and it fails to give adequate warning of such danger, the product sold without such warning is in a defective condition within the strict liability doctrine.

### INSTRUCTION NO. 19

You are instructed that the duty to warn is not an absolute duty and there is no duty to warn of dangers that are clearly obvious or apparent to the user and it is unnecessary to warn when such warning is meaningless. The duty to

warn exists only when the danger or risk of harm is not obvious.

As indicated above, at trial Sukup suggested two other methods of obtaining samples for testing. Neither of these methods was suggested in the written material provided to the purchaser of the unit. No specific instruction was given regarding the sampling of grain.

Sukup contends that under *Jahnig v. Coisman*, 283 N.W.2d 557 (S.D.1979), and *Brech v. J.C. Penney Co., Inc.*, 698 F.2d 332 (8th Cir.1983), there is no duty to warn if the danger is patent. We conclude that the instant case is distinguishable from those cases, however, in that Berg was actually invited into the zone of danger by the design of the drying unit. Additionally, it was for the jury to determine, pursuant to Instruction No. 19, whether the danger was clearly obvious.

■ The instructional materials furnished by Sukup failed to advise the operator not to use the slide gate for sampling. The user was subjected to a risk because of faulty or poor instructions. *See Midgley v. S.S. Kresge Co.*, 55 Cal.App.3d 67, 127 Cal. Rptr. 217 (1976), and *Jahnig v. Coisman, supra.* The questions of duty to warn and adequacy of warning were jury questions.

The judgment is affirmed.

WOLLMAN, Acting C.J., and DUNN, Retired Justice, concur.

HENDERSON, J., and WUEST, Circuit Judge, concur specially.

TSCHETTER, Circuit Judge, sitting for FOSHEIM, C.J., disqualified.

WUEST, Circuit Judge, sitting for MORGAN, J., disqualified.

HENDERSON, Justice (specially concurring).

Digesting the majority opinion together with the issues and briefs in this case, I principally write to make sure that settled South Dakota law does not become unsettled.

I would sustain this verdict in favor of Berg and against Sukup in the amount of $81,223.56 based upon strict liability.

A "plaintiff's or [a] defendant's negligence is irrelevant and contributory negligence is not a defense in strict liability." *Smith v. Smith*, 278 N.W.2d 155, 160 (S.D. 1979). "Strict liability in products liability cases ... relieves the plaintiff of the burden of proving negligence by the manufacturer ... and deprives the defendant of contributory negligence as an affirmative defense." *Jahnig v. Coisman*, 283 N.W.2d 557, 560–61 (S.D.1979). Assumption of the risk (although a legitimate defense to strict liability) was, under these facts, a question of fact for the jury. *Smith, supra,* at 162, Henderson, J., concurring specially.

After return of the verdict and entry of judgment, Sukup filed motions for judgment notwithstanding the verdict and for a new trial. Sukup argued that Berg's conduct amounted to contributory negligence more than slight and assumption of the risk as a matter of law. In my opinion, these arguments are not well taken.

This $81,223.56 verdict was a general verdict. No one knows upon which theory it was predicated. Simultaneous submission to the jury of theories of both negligence and strict liability will likely confuse jurors and cloud the settled principles of law on both theories. It tends to create murky conceptual waters. The better practice would have been to require a special verdict with interrogatories, that we might be assured the issues were adequately separated. Nevertheless, if a verdict is general in nature and does not permit a determination to be made on which theory the jury allowed recovery, it is presumed the verdict was based on the theory on which it could be sustained. *Baker v. Jewell*, 77 S.D. 573, 96 N.W.2d 299 (1959).

My suggestion is in keeping with the spirit of past expressions of this Court. "It is sometimes difficult to distinguish defendant's negligence, the effect of plaintiff's assumption of risk or his contributory negligence and the exact ground upon which courts may have rested the deci-

sion." *Bunkers v. Mousel,* 83 S.D. 45, 49, 154 N.W.2d 208, 210 (1967). *See also Platt v. Meier,* 83 S.D. 10, 153 N.W.2d 404 (1967).

There can be no doubt that a verdict based upon strict liability could be sustained. Contributory negligence is no defense in a strict liability action. Therefore, there was no error in failing to grant appellant's motions.

I am authorized to state that WUEST, Circuit Judge, joins in this special concurrence.