**Charles H. NOVAK, Jr., Appellant,**

v.

**NAVISTAR INTERNATIONAL TRANSPORTATION CORPORATION,**
Appellee.

**No. 93–2823.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1994.

Decided Feb. 2, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied March 27, 1995.

Arlo D. Sommervold, Sioux Falls, SD (James E. Moore, on the brief), argued, for appellant.

Frank J. Dailey, Milwaukee, WI (Francis H. LoCoco, Milwaukee WI and Gregg Greenfield, Sioux Falls, SD, on the brief), argued, for appellee.

Before McMILLIAN and WOLLMAN, Circuit Judges, and NANGLE,* Senior District Judge.

WOLLMAN, Circuit Judge.

Charles H. Novak, Jr., who was injured in an accident involving a tractor manufactured by International Harvester Company, brought this diversity suit in United States District Court against Navistar International Transportation Corporation, successor to International Harvester. He appeals from the judgment entered on the jury verdict in favor of Navistar on the grounds that: 1) no evidence supported the court's instruction that the jury consider the affirmative defense of assumption of risk, and, even if there was such evidence, the court's instruction on the issue was legally insufficient; 2) the district court wrongly refused to give Novak's proposed jury instructions on Navistar's duty to warn of a possible dangerous condition in its tractors; and 3) the district court erroneously excluded evidence of a similar accident.

## I. Background

On the evening of June 11, 1989, Novak was badly injured when he was run over by the six-row planter he was using to plant soybeans on his farm near Yankton, South Dakota. Novak had run out of seed beans at about 7:00 p.m. and went to his farm to get more. When he returned to the field about one half-hour later, he loaded the beans into the planter, climbed onto the tractor, and attempted to start the engine.

The engine did not turn over, however, so Novak got off the tractor, took a screwdriver from the toolbox, and, while standing on the ground in front of the tractor's right rear tire, placed the screwdriver across the solenoid terminals. This maneuver, called "jump-starting," bypasses the normal ignition circuitry, including the switch that requires the operator to depress the clutch pedal in order to activate the starter. The starter engaged, the engine started, and, after a brief delay, the tractor moved forward. Novak was thrown to the ground by the tractor and was run over by the planter. He remembers nothing more about the accident, not regaining consciousness until four months later.

Novak, who was then 61, had been farming for 45 years at the time of the accident. As a result of the injuries he sustained in the accident, he is now permanently paralyzed and is confined to his bed and an electric wheelchair. He has enough use of one hand to perform his daily ablutions, but relies on his sister and other relatives for most of his care.

The tractor Novak was using at the time of the accident was a Farmall 706D. It was manufactured by International Harvester in 1967 and was purchased by Novak in November of 1976. It was one of International Harvester's 06 series (706, 806, and 1206) tractors, some 100,000 of which were built between 1963 and 1967.

Turning to the mechanics of the accident, the purpose of the park lock mechanism on the 706D tractor is to prevent the tractor from moving when not in use. The lock-neutral mechanism prevents the park lock from being engaged while the tractor is in gear; therefore, the tractor is designed in such a way that the gear shift control lever must be in neutral before the park lock can be engaged.

Novak's case centers on his contention that although he put the gear shift lever into neutral and engaged the park lock when he shut off the tractor before leaving to get more seed, the tractor moved forward after he jump-started the engine. Navistar's expert testified that this would only happen if the gear selector, while concededly under the "N" mark, had not quite been clicked into the neutral notch and that even this near-miss problem resulted from an easily corrected misalignment of the park lock brake mechanism. Navistar produced testimony that this condition typically comes to light not when the tractor is started, but rather during proper shut-down procedure: after the gear shift lever has been moved to neutral and the

* The HONORABLE JOHN F. NANGLE, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

park lock lever pushed down, the operator should let out the clutch, then move the throttle up to the closed position to stop the engine; if the tractor is not actually in neutral, it lurches forward as the engine throttles down before dying.

Novak presented testimony that about once every 20–40 times the tractor, when started while seemingly in neutral with the park lock lever down, could, after a delay of up to several seconds, move forward. There was testimony that the momentary delay is the result of the engine's needing a little time to build up torque enough to overcome the park lock mechanism, which, much like a car's emergency brake, presents some resistance but not necessarily enough to hold the engine if the tractor is in gear.

Novak testified that before leaving the tractor to go get more seed, he had shut off the engine by closing the throttle, had put the gear shift lever into neutral, and had put the park lock lever into the down and locked position. He then let out the clutch and got off the tractor. On cross-examination, however, he testified that he had let the clutch out to make sure that the tractor was not in gear before he pushed up the throttle to shut off the engine.

Novak and his nephew testified that Novak habitually put the tractor in neutral and put down the park lock lever when shutting down the machine. Novak testified that he had on prior occasions jump-started the tractor without incident.

Novak sought to prove that the accident was caused by a defective coupling between the park lock lever and the pawl that engages the parking gear to hold the tractor in place. He submitted evidence showing that because of its design, the coupling (in this case a turnbuckle) could become either bent or maladjusted with use, creating a situation where the operator could sometimes move the gear selector to the neutral spot, and therefore become able to pull the park lock lever down, while the tractor actually remained in gear. There was testimony that the dangerous condition alleged by Novak is regularly seen among certain International Harvester tractors, including the 706D model owned by Novak.

After using the turnbuckle design for many years, International Harvester in 1977 or 1978 began producing a replacement part kit using a solid rod rather than a turnbuckle, a change Novak asserts eliminated the problem by ending any need to readjust the turnbuckle. At least since the early 1980s, the turnbuckle has not been available from International Harvester/Navistar. After the design change, International Harvester/Navistar made no effort to recall the allegedly defective turnbuckles or to inform owners or dealers of the alleged problem.

Novak testified that he had no inkling of the problem or its possible solutions. The owner's manual for the 706D made no reference to the potentially dangerous condition nor even to the need to periodically adjust the turnbuckle.

Four witnesses, well-versed in tractor mechanics, farming, or both, testified that farmers occasionally jump-start tractors from the ground and that jump-starting is a virtual requirement for some tractor servicing and repairs.

■ Because the case was brought under the district court's diversity jurisdiction, we apply South Dakota law to the substantive legal issues raised by the appeal. We give plenary review to the district court's determination of state law. *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1220–21, 113 L.Ed.2d 190 (1991); *Follette v. Wal–Mart Stores, Inc.,* 41 F.3d 1234, 1236 (8th Cir.1994). "As a federal court, our role is to interpret state law in diversity cases and not to fashion it." *Karas v. American Family Ins. Co.,* 33 F.3d 995, 1000 (8th Cir.1994). If state law is unsettled, it is our duty to apply the rule we believe the South Dakota Supreme Court would follow. *Utility Electric Supply, Inc. v. ABB Power T & D Co.,* 36 F.3d 737, 739 (8th Cir.1994); *Gearhart v. Uniden Corp. of America,* 781 F.2d 147, 149 (8th Cir.1986).

## II. Assumption of Risk

The district court gave the following jury instruction, which is a verbatim restatement

of South Dakota Pattern Jury Instruction 13–01:

## Instruction No. 19

It is the law that a person cannot be heard to complain of a dangerous condition, situation or conduct when such person with knowledge thereof voluntarily places himself or herself in a position wherein he or she knows of hazard of injury or damage to himself or herself from such dangerous condition, situation or conduct. To support an assumption of the risk defense, the defendant must show that the plaintiff not only had knowledge of the existence of the specific risk involved and appreciation of its character, but also that he or she voluntarily accepted the risk. This requires the defendant to show that the plaintiff had a sufficient amount of time, knowledge and experience to make an intelligent choice. If this is shown, the plaintiff is deemed to have assumed the risk of injury or damages and is not entitled to any recovery.

Novak claims that he was unaware of the specific defect that he alleges caused the accident. He testified that he never received any warnings from Navistar concerning the park lock system even though Navistar obtained his name, address, and tractor information shortly after he bought the machine. Novak did testify, however, that he was aware that jump-starting the tractor was more dangerous than starting it from the driver's seat, because he could be hurt if for any reason the tractor was in gear when the engine started. Novak also acknowledged that he had bought a new starter for his brother's 806 International Harvester tractor to avoid the hazards of jump-starting. (The record is unclear whether this new starter was a $4.00 jump-starting kit with alligator clips and wires, or a more costly new starter that was installed on the tractor.)

Navistar sought to show that no matter whether the original turnbuckle design or the solid rod replacement kit was used, periodic adjustment was needed for the safe operation of the park lock mechanism. Navistar went on to point out that the owner's manual, of which Novak had a copy, while not mentioning turnbuckle maintenance, did call for an annual dealer inspection of the tractor. Novak testified at his deposition that he had never brought the tractor in for service. At trial, however, he testified that he had taken it in once in the 1980s.

Novak contends that because there was no evidence that he knew about the specific defect, an assumption of the risk instruction should not have been given. If it was proper to give the instruction, however, Novak argues that the one given was inadequate because of its failure to include the statement that the plaintiff must have knowledge of the specific defect and the risk it posed, rather than simple generalized knowledge that he has entered a zone of danger. Citing comment n to the Restatement (Second) of Torts § 402A, Novak argues that under South Dakota product liability law, a plaintiff who engages in conduct known to be dangerous can still recover if it is an unknown product defect that causes the accident.

Novak's proposed instruction on assumption of risk reads as follows:

The law requires that a person with knowledge of a dangerous condition or situation not voluntarily place himself in danger; a person with knowledge of a dangerous condition must look out for his own safety. Thus, a person cannot be heard to complain of a dangerous condition or situation when, with knowledge of the danger, he voluntarily places himself in a position which he knows to be dangerous to himself. If you find by a preponderance of the evidence that plaintiff knew and appreciated the risk or danger created by the defect, that plaintiff voluntarily placed himself in danger because of his knowledge, and that plaintiff's decision to voluntarily encounter the risk was unreasonable, then plaintiff assumed the risk of injury to himself, and your verdict must be for defendant.

Navistar argues that South Dakota law requires only evidence that a defendant have knowingly placed himself in a zone of danger to support an assumption of risk instruction. It contends that requiring knowledge of the specific defect would effectively deprive manufacturers of the defense of assumption of

the risk. Navistar contends that Novak undertook a dangerous activity that any number of causes could easily have turned into catastrophe and that he thereby assumed the risk of all those potential accident causes.

The question, then, is whether in a South Dakota strict product liability action an assumption of the risk defense simply requires knowledge by the product user that he has entered a zone of potential danger, or whether a more specific awareness of the dangerous defect which actually causes the accident is needed.

Comment n of the Restatement (Second) of Torts § 402A provides:

[T]he form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery.

Accepting Navistar's argument would reinject the notion of contributory negligence into South Dakota's product liability law, a result that the South Dakota Supreme Court has rejected. *E.g. Smith v. Smith*, 278 N.W.2d 155, 161 (S.D.1979). The language in *Smith* is clear: "By assumption of risk we mean the conduct of one who is aware the product is defective ... and nevertheless proceeds to make use of the product." *Id.* at 161. In reaching this holding, the court relied upon Comment n. *Id.* at 160 n. 5.

In *Berg v. Sukup Mfg. Co.*, 355 N.W.2d 833 (S.D.1984), the South Dakota Supreme Court relied upon Comment n in holding that to prevail under the theory of assumption of risk, a manufacturer must show that "the

plaintiff knew and appreciated the risk or danger created by the defect." *Id.* at 835.

■ In the light of *Smith* and *Berg*, we conclude that the South Dakota Supreme Court would accept Novak's argument and would hold that he was entitled to an instruction patterned on Comment n.

In reaching this conclusion, we note that Navistar's own proposed instruction No. 17, not adopted by the district court, is not far from Novak's proposed instruction in that it paraphrases the *Smith* language requiring knowledge of the specific defect.[1]

■ While the evidence is certainly not overwhelming on this point, we conclude that a jury could find that Novak had knowledge of the defect in the park lock assembly that would permit the park lock lever to be placed into the locked position while the tractor was still in gear. Novak acknowledged that he knew that jump-starting was potentially dangerous. As indicated above, he introduced evidence to the effect that about once every 20–40 times, the tractor would move forward when started with the gear shift lever seemingly in neutral and the park lock lever in the down and locked position. If the jury accepted this testimony as true, it could very well conclude that Novak had experienced this condition sometime during the twelve and one-half years that he had owned and operated the tractor. Thus, we cannot say that there was absolutely no evidence that Novak knew that the park-neutral mechanism was defective. *Cf. Nelson v. Stormor, Inc.*, 701 F.2d 742 (8th Cir.1983).

### III. Duty to Warn or Instruct

Novak submitted the following jury instructions relating to Navistar's duty to warn consumers of dangerous conditions:

1. Navistar's proposed Instruction No. 17 reads as follows:

In a strict products liability action there are two circumstances where the user's conduct will bar recovery. These two circumstances are when the consumer assumes the risk or misuses the product. Assumption of the risk means the conduct of one who is aware the product is defective, knows the defect makes the product unreasonably dangerous, has a reasonable op-

portunity to elect whether to expose himself to the danger, and nevertheless proceeds to make use of the product. Misuse means use of the product in a manner or purpose other than that for which it was manufactured. If you find that Plaintiff assumed the risk or misused the product, as such terms are defined in this instruction, Plaintiff cannot recover on his strict liability claim.

850

### Proposed No. 11

Plaintiff can also recover against defendant on a theory of strict products liability if defendant failed to give adequate warnings of the danger that existed because of the tractor's design. The law requires that defendant give adequate warnings at the time of sale of dangers inherent in the tractor's use as well as dangers involved in uses that defendant can reasonably anticipate. If plaintiff proves by a preponderance of the evidence that defendant failed to give warnings, the tractor is in a defective condition unreasonably dangerous without regard to its design. For purposes of strict liability, the unreasonableness of the condition of the tractor, not the conduct of the defendant, creates liability. Whether any warnings given by the defendant were adequate is for you to determine.

### Proposed No. 22

Defendant also has a continuing duty to give adequate warnings of dangers inherent in the tractor's use that defendant learns of after sale. Defendant is required to keep informed about its products from research, accident reports, scientific literature, and other sources reasonably available to it, and to use reasonable methods to give adequate warnings of dangers that it learns of during the expected useful life of the product. If a manufacturer learns after sale of a product of a defect that existed at the time of sale that made the product unreasonably dangerous, the manufacturer must use reasonable methods either to give users adequate warnings of the danger or to redesign the product. Whether any efforts made by defendant were adequate is for you to determine.

Novak argues that the failure to warn of a possibly dangerous condition is by itself a product defect, quite apart from the question whether the underlying condition rises to the level of a defect. Novak's position is that even if the need to at least periodically adjust the turnbuckle is not a defect, the failure to inform the consumer of this need to adjust may be.

Novak argues that in South Dakota a "'well-designed product may be found to be defective without an adequate warning,'" citing *Peterson v. Safway Steel Scaffolds Co.*, 400 N.W.2d 909, 912 (S.D.1987). Therefore, he contends, the jury could find that, because of the potential for maladjustment, Navistar's failure to warn of that potential problem caused the tractor to be defective regardless of whether or not the turnbuckle design was defective.

In support of the continuing or post-sale duty to warn referred to in proposed instruction No. 22, Novak chiefly relies on *Holmes v. Wegman Oil Co.*, 492 N.W.2d 107, 112–13 (S.D.1992).

Navistar argues that there was no evidence that any failure to warn contributed to Novak's injury, in that Novak already knew that he was placing himself in a zone of danger. Navistar distinguishes *Holmes* on the basis that in that case the manufacturer admitted the defect and knew of many extremely serious injuries caused by it, yet failed to act responsibly in recalling its product. Here, Navistar does not admit a defect, nor is there evidence of a number of similar accidents. Navistar also argues that it is logical to assume that the jury found the tractor had no defect, and that thus there was nothing to warn of.

Based upon our reading of *Peterson* and *Holmes,* we believe that the South Dakota Supreme Court would hold that, given Navistar's production of the solid rod replacement kit in 1977–78, it had the duty to warn users of the 06 series tractors of the potential danger that could result from the continued use of the original turnbuckle mechanism and of the need to readjust that mechanism. We note that in *Zacher v. Budd,* 396 N.W.2d 122, 139 (S.D.1986), the South Dakota Supreme Court found that a usage warning should have been impressed on truck-wheel rims, so that not only purchasers and owners, but those who later serviced the wheels, would be protected by proper instructions. Accordingly, we conclude that the district court should have given the jury appropriate instructions on Navistar's duty to warn. The particular wording

of such instructions we leave to the district court to fashion on remand.

## IV. Substantially Similar Accident

Novak sought to introduce facts and testimony from a Mississippi accident which Novak alleged was caused by the same flaw. *See Wilmoth v. Peaster Tractor Co.,* 544 So.2d 1384 (Miss.1989). In response to the district court's question whether Novak was asserting that the Mississippi case should be submitted to the jury as a similar accident, Novak's counsel replied, "No," whereupon the district court ruled that Novak would be permitted to refer to the testimony given by Navistar's expert witness in the Mississippi case, but that the facts of that case could not be submitted to the jury.

The decision to admit evidence of other accidents is committed to the district court's sound discretion. *McKnight v. Johnson Controls, Inc.,* 36 F.3d 1396, 1410 (8th Cir.1994); *Drabik v. Stanley–Bostitch, Inc.,* 997 F.2d 496, 508 (8th Cir.1993).

In view of counsel's response to the court's question, we conclude that the district court acted well within its broad discretion in excluding evidence describing the facts of the Mississippi accident, *Laubach v. Otis Elevator Co.,* 37 F.3d 427, 428 (8th Cir.1994), for if prior incidents are not substantially similar to the one giving rise to the case in issue, they are not admissible. *Id.; McKnight,* 36 F.3d at 1410; *Drabik,* 997 F.2d at 508.

## V. Conclusion

The judgment is reversed, and the case is remanded to the district court for new trial.